Marc J. Victor, SBN 016064
Jody L. Broaddus, SN 020122
ATTORNEYS FOR FREEDOM
3185 South Price Road
Chandler, Arizona 85248
Phone: (480) 755-7110
Fax: (480) 857-0150
Marc@AttorneyForFreedom.com
Jody@AttorneyForFreedom.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brigham A Burton a/k/a Kent Burton, and Carly Burton, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>State of Arizona, a municipal entity, and Kevin Watt,<br><br>Defendants. | Case No: 2:20-cv-00920-JAT-JZB<br><br>**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>(Assigned to the Hon. James A. Teilborg) |

Plaintiffs Brigham A Burton a/k/a Kent Burton, and Carly Burton, (hereinafter referred to as "Plaintiffs"), by and through undersigned counsel and for their Amended Complaint against Defendants, allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiffs bring this action pursuant to 42 U.S.C § 1983, and the First, Fourth, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

2. Jurisdiction and venue are proper in the Court pursuant to 28 U.S.C. § 1331 and 1343.

3. The events at issue in this lawsuit occurred in the State of Arizona.

4. Plaintiffs are, and were at all material times, residents of the State of Arizona.

5. Plaintiffs Brigham A Burton a/k/a Kent Burton and Carly Burton are a married couple.

6. Defendant State of Arizona (hereinafter referred to as "Arizona") is a municipality formed and designated as such pursuant to Title 9 of the Arizona Revised Statutes.

7. Defendant Arizona is subject to a civil suit and may be held liable both independently and vicariously, as permitted by federal and state law, for the wrongful conduct of its officers, employees, agents, districts, and divisions/sub-divisions, including the Arizona Department of Public Safety ("DPS") and its officers and employees.

8. At all times material to this Complaint, Defendant Kevin Watt ("Watt") was resident of the State of Arizona.

9. At all times material to this Complaint, Defendant Watt was an agent and employee of Defendant Arizona and was acting within the course and scope of his employment with the Arizona Department of Public Safety. Defendant Watt is sued both in his official and individual capacities for purposes of Plaintiffs' claims under 42 U.S.C. § 1983.

**GENERAL ALLEGATIONS**

10. On or about May 16, 2019, Plaintiff Brigham Burton was on a bike ride with two of his four children, when the Defendant and its officers stopped Brigham and his two children and told him that if he cooperated that they would not "go swat" on Plaintiff's home and frighten his wife Carly and two other children who were still at home.

11. Plaintiff Brigham Burton fully complied with the officer, not knowing that Defendant Kevin Watt was lying to him and that they had already entered into Plaintiffs' residence and arrested his wife Carly in front of their other two children in their home.

12. Defendants arrested Plaintiffs without a warrant for the arrest.

13. Defendant Watts arrested Plaintiffs Brigham and Carly Burton without any probable cause for the arrest.

14. Defendant violated the Fourth and Fourteenth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures and sets requirements for issuing warrants as follows: warrants must be issued by a judge or magistrate, justified by probable cause, supported by oath or affirmation, and must particularly describe the place to be searched and the persons or things to be seized.

15. Plaintiffs were arrested in front of their children while their four minor children cried, and Defendants refused to provide any information as to where Plaintiffs or their kids would be taken.

16. Defendant Watt denied Plaintiffs access to call a family member to have them come to watch the kids, and he instead chose to file a neglect claim with the Arizona Department of Child Services ("DCS"), spurring a child-abuse/child-neglect investigation against Plaintiffs.

17. Defendant Watt's actions lead to the removal of legal and physical custody of Plaintiffs' children for nearly 6 weeks after the false arrest.

18. At the time of the arrest, Defendant Watt pressed metal cuffs into Plaintiff Brigham Burton's wrists behind his back until his wrists were bleeding. Plaintiff asked if Defendant Watt could please loosen them as the pain was severe, but the Defendant Watt instead made them tighter.

19. Defendant Watt left the handcuffs on the Plaintiff for several hours at a police holding facility even while being detained in a secured jail cell.

20. The minor children and Plaintiffs' parents, who came to try to help take custody of the children, witnessed Defendant Watt remove a secured-key case from a high shelf, which the Defendant opened and left open on the floor without properly securing the gun from the children, thereby putting the children at undue risk of possible harm or death.

21. Plaintiffs were not read their Miranda rights until several hours after the arrest and only after several hours of intimidation, threats, and interrogation.

22. Plaintiffs were denied the right to call their attorney at the time of arrest and only given a phone book and a jail phone several hours after the arrest.

23. After Plaintiff Carly Burton arrived at the holding facility, she told them she wanted to exercise her right to an attorney, at which point Defendant Watt put Plaintiff Carly Burton back in the small holding cell for several hours.

24. Plaintiff Carly Burton asked when she was going to get to talk to an attorney and Defendant Watt told her she could not call an Attorney, and that this was "not how this works."

25. Defendant Watt told Plaintiff Carly Burton that she was going to go to jail, and that her trial was the next day, and that she was going to lose custody of her children and possession of her home if she didn't cooperate.

26. After several hours of Defendant Watt's intimidation, verbal abuse and threats, Plaintiff Carly, who had not been read her Miranda rights until later, and after seeing no other way out, Plaintiff Carly Burton reluctantly gave into Defendant Watt's demands and spoke openly answering all questions he had asked of her for several hours, even though she had requested an attorney.

27. The jail cells were filled with gnats, flies, and roaches.

28. Additionally, there was no separation of alleged criminals based on the criminal charges. Plaintiff Brigham Burton shared the same cell with 2 men who had killed another and were being released after serving multi-year sentences.

29. Defendant Watt's abuse of Plaintiffs at the time of their arrest and while in jail, violated the Plaintiffs' constitutional rights.

30. After Plaintiffs spent more than 30 hours in jail, the Maricopa County Superior Court entered a final order finding "No Probable Cause."

31. As a result of Judge's order, Plaintiffs were released from custody.

32. Judge Carson stated on the record that *in her entire career*, she'd never seen such an inappropriate handling and arrest, and that she reviewed Defendant Watt's and prosecution's claims and found none of them valid whatsoever, going so far as to rebuke

the Defendant/prosecution and citing that Defendant's jurisdiction against Plaintiffs was also questionable.

33. Pursuant to A.R.S. §13-821.01, Plaintiffs timely served its notice of claim against Defendant for the false arrest and related abuses, the first dated on June 10, 2019.

34. About two weeks after the "no probable cause ruling" on June 24, 2019, Arizona DPS published a Press Release on the internet which contained false and defamatory statements about the Plaintiffs.

35. Pursuant to A.R.S. §13-821.01, Plaintiffs timely served a second notice of claim against Arizona DPS, on April 12, 2020 shortly after Plaintiffs discovered that Arizona DPS had made the subsequent defamatory statements online about Plaintiffs, leading to Plaintiff Carly Burton's chosen career and employment working with Arizona Department of Child Safety being terminated on February 13, 2020.

36. Defendant Watt removed personal property from Plaintiffs' home, including business records and files needed for tax purposes to ensure Plaintiffs are compliant with all tax-related laws.

37. In an effort to properly complete Plaintiffs' government-required tax-returns, Plaintiffs asked Defendant Watt if they could pick up a copy of the records from Defendant Watts, but Defendant Watt said no.

38. Defendant Watt also took personal diaries and journals, cell phones, computers, laptops, books, cash, and other property that belongs to Plaintiffs, and Defendant Watts has yet to return any of these items to Plaintiffs even after multiple requests.

39. On or about May 16, 2019, Plaintiffs were arrested by Defendant Watt in Maricopa County, Arizona without a warrant to do so, on the charges of Aggravated taking the identity of another or entity, Forgery, Fraudulent schemes and artifices, Fraudulent schemes and practices/willful concealment, Perjury by inconsistent statements, Theft and Unlawful use of food stamps. The Court made no finding of probable cause to support any of Defendant's claim that Plaintiffs committed any of the above crimes.

40. Defendant Watt also claimed that they had "discovered" that Plaintiffs "falsified victims' financial records." However, the Court made no finding of probable cause to support Defendant Watt's claim that Plaintiffs ever falsified any financial records.

41. Defendant Watt falsely claimed that Plaintiffs "obtained goods and services in the names of the victims and defrauded victims out of more than $100,000." However, the Court made no finding of probable cause to support Defendant's claim that Plaintiffs ever obtained goods and services in the names of any victim.

42. Defendant Watt falsely claimed in the online post that Plaintiffs "defrauded the Arizona Department of Economic Security by falsifying revenue records and unlawfully collecting more than $20,000 in food stamps." Again, the Court made no finding of probable cause to support Defendant's claim that Plaintiffs ever falsified any revenue records or unlawfully collected more than $20,000 in food stamps.

43. Defendant Watt falsely claimed that during the time Plaintiffs "were unlawfully receiving food stamps that they were also attempting to acquire a $2.2 million business." However, the Court made no finding of probable cause to support Defendant's defamatory statement that Plaintiffs ever unlawfully received food stamps.

44. As a result of Defendants' wrongful acts and omissions Plaintiff Carly Burton was terminated from her employment with Arizona Children's Association ("AZCA"), an agency which works hand-in-hand with the Arizona Department of Child Safety. ("DCS").

45. In February, 2020, DCS officers stated to AZCA that they will no longer allow Plaintiff Carly Burton to work in her chosen career with DCS, effectively ending Carly Burton's chosen career of working with families in distress in Arizona.

46. Plaintiff Brigham Burton has been denied business opportunities, loans, and investment capital that might have otherwise been secured until the defamatory online post by Defendants was discovered.

47. Plaintiffs' wrongful arrest and defamatory statements afterwards towards them, deprived Plaintiffs of their good name and reputation.

48. Defendant Arizona failed to employ proper protocols and training and failed to use proper methods to execute an arrest. Further, there was no probable cause to arrest the Plaintiffs.

49. The acts and omissions of Defendant Watt alleged herein was taken on behalf of, for the benefit of, and as an agent of Defendant Arizona. Also, such acts and omissions occurred in the course and scope of the officers' employment with Defendant Arizona. Upon information and belief, the acts and omissions were either authorized by, were directed or caused by, or were consistent with or performed pursuant to policies, practices, and customs of Defendant Arizona. Therefore, Defendant Arizona is liable for all such acts and omissions, as well as Plaintiffs' injuries and damages that result from such acts and omissions.

50. Defendants' wrongful conduct deprived Plaintiffs rights secured to them by the Constitution and the laws of the United States, including, among other things:

    a. The right to be free from unreasonable search or unreasonable seizure;

    b. The right to be free from the use of unreasonable, unjustified, and excessive force;

    c. The right to be free from deprivation of life, liberty, or property without due process of law; and

    d. The right to be free from summary punishment;

    e. The right to familial association.

51. Defendants' wrongful acts and omissions have had, and will continue to have, an extremely detrimental impact on the Plaintiffs, and their damages are significant. Plaintiffs have sustained injuries and damages in an amount to be proven at trial.

52. Defendant Watt's acts and omissions were evil, malicious, and undertaken with the intent to harm Plaintiffs or with a reckless disregard of the substantial risk of serious harm, and Defendant Watt acted with an evil mind. Therefore, Plaintiffs are entitled to punitive or exemplary damages.

53. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs, including expert fees.

# COUNT I
### 42 U.S.C. § 1983–Violation of the
### Fourth and Fourteenth Amendments
### (Against Defendants Arizona and Watt)

54. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations contained in the paragraphs above, as if set forth fully herein.

55. Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights by falsely arresting Plaintiffs.

56. Defendants violated Plaintiffs' due process rights of the Fourteenth Amendment which prohibits the states from depriving "any person of life, liberty, or property, without due process of law."

57. At all times material hereto, Defendant Watt was acting under the color of law and within the course and scope of his employment.

58. Plaintiffs, at all relevant times, had the clearly established right to be free from wrongful arrest under the Fourth and Fourteenth Amendments.

59. Plaintiffs did not commit a crime, and no probable cause existed to suspect them of any illegal activity.

60. Defendant Watt wrongfully and illegally detained, handcuffed, and arrested Plaintiffs despite the lack of probable cause to do so.

61. Defendant Watt deprived Plaintiffs of their Fourth Amendment rights to be secure in their person by arresting them.

62. The arrest of Plaintiffs was wrongful, unlawful, lacked probable cause, and deprived them of their clearly established constitutional rights to be free from unreasonable searches, seizures, and arrests. Therefore, Defendant Watt is not entitled to qualified immunity.

63. Defendants' conduct violated clearly established constitutional rights, which any reasonable person would have known such conduct would do so. Therefore, Defendant Watt is not entitled to qualified immunity.

64. As a direct result of Defendant's actions, Plaintiffs have been deprived of property, their good name, and have been emotionally and financially damaged.

## COUNT II

### Intentional Infliction of Emotional Distress

65. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein.

66. Defendants engaged in grossly negligent and/or the intentional infliction of emotional distress, as their conduct was extreme and outrageous, they either intended to cause emotional distress, and/or they recklessly disregarded the near certainty that such distress will result, and severe emotional distress actually occurred as a result of the defendant's conduct.

67. As a direct and proximate cause of Defendant's willful and outrageous false arrest, false imprisonment, and then 6 weeks after the finding of no probable cause, the blatant lies posted by Arizona DPS meant to hurt Plaintiffs' reputation, are truly unconscionable and outrageous, and Plaintiffs have been severely emotionally damaged, had their good name damaged, and have been embarrassed.

## COUNT III

### 42 U.S.C. § 1983 –Wrongful Arrest in Violation of the Fourth and Fourteenth Amendments
### (Against Defendant Watt)

68. Plaintiffs hereby re-allege and incorporate by reference each of their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein realleged.

69. Defendants knew, or should have known, that they had no probable cause whatsoever to effectuate an arrest of Plaintiffs.

70. Defendant Watt had no warrant or probable cause to arrest Plaintiffs.

71. Defendant Watt had no substantive or circumstantial evidence to support an arrest of Plaintiffs.

72. At all times material hereto, Defendant Watt was acting under the color of law and within the course and scope of his employment.

73. Plaintiffs, at all relevant times, had the clearly established right to be free from wrongful arrest under the Fourth and Fourteenth Amendments.

74. Plaintiffs did not commit a crime and no probable cause existed to suspect them of any illegal activity.

75. Defendant Watt wrongfully and illegally detained, handcuffed, and arrested Plaintiffs despite the lack of probable cause to do so.

76. Defendant Watt deprived Plaintiffs of their Fourth Amendment rights to be secure in their person by arresting them.

77. The arrest of Plaintiffs was wrongful, unlawful, lacked probable cause, and deprived them of their clearly established constitutional rights to be free from unreasonable searches, seizures, and arrests. Therefore, Defendant Watt is not entitled to qualified immunity.

78. Defendant Watt's wrongful conduct motivated by spite or ill will or acted to serve his own interests, having reason to know and consciously disregarding a substantial risk that their conduct might significantly injure the rights of Plaintiffs.

79. As a direct and proximate result of Defendant Watt's wrongful acts and omissions, Plaintiffs have been damaged in an amount to be proven at trial.

### COUNT IV
### 42 U.S.C. § 1983 – Municipal Liability
### (Against Defendant Arizona)

80. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein.

81. The final policymakers of the State of Arizona had actual or constructive knowledge of these unconstitutional practices yet failed to take any reasonable or adequate steps to remedy them.

82. Defendant Arizona is also liable under § 1983 for failing to train employees and such failure can be traced to the injuries suffered by Plaintiffs and amounts to deliberate indifference to the rights of Plaintiffs, with whom Defendant Arizona's officers come into contact.

83. Defendant Arizona was aware of the inadequate training and aware of a high probability of harm if the government failed to act and properly train its employees.

84. Acting under the color of law, by and through the policy makers of Defendant Arizona and pursuant to official policy, customs, and/or patterns and practices, Defendant Arizona intentionally, knowingly, recklessly, and/or with deliberate indifference to the rights of the inhabitants of Defendant Arizona failed to instruct, supervise, control, and/or monitor its police officers.

85. These policies, customs, and/or patterns and practices led the individual Defendants to believe that misconduct and abuse of constitutional rights would be tolerated and not be subject to any meaningful reprimand or punishment.

86. This pattern made it foreseeable that officers with the Arizona Department of Public Safety, including the individual Defendant Watt, could and would violate a given person's constitutional rights, in precisely the manner Plaintiffs' rights were violated, and Defendant Arizona, through its final policy makers, was deliberately indifferent to this risk. Had Defendant Arizona diligently exercised its duties to instruct, supervise, control, and discipline, on a continuing basis, it could have prevented or could have aided in preventing the commission of said wrongs and intentionally, knowingly, and with deliberate indifference to the inhabitants of Defendant Arizona refused to do so.

87. As a result of Defendant Arizona's failure to supervise, discipline, and train the officers with the Arizona Department of Public Safety, as well as its ratification of the wrongful acts, Plaintiffs suffered, and continue to suffer, emotional, and pecuniary damages in an amount to be proven at trial.

**COUNT V**

**Defamation**
**(Against Defendant Arizona)**

88. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein.

89. Defendant Arizona is vicariously liable under the principle of *respondeat superior* for the acts and omissions of its employees, such as Arizona Department of Public Safety, because it was acting within the scope and course of its employment with Defendant Arizona.

90. Arizona Department of Public Safety made a defamatory publication on the Arizona Department of Public Safety's website about the Plaintiffs that brought the Plaintiffs into disrepute, contempt, ridicule, and impeached Plaintiffs' honesty, integrity, virtue, and reputation.

91. Defendant Arizona knew or should have known that the charges against the Plaintiffs were dropped but decided to post a defamatory statement of what Plaintiffs were falsely charged with six (6) weeks after their arrest and after the Court finding no probable cause. Defendant Arizona acted in reckless disregard of the Plaintiffs' rights.

92. At the time of publication, Defendant Arizona knew, or should have known, that the arrest was unlawful, and the charges were not true based on any probable cause.

93. As a direct and proximate result of Defendants deliberate indifference and grossly negligent acts and omissions, Plaintiff suffered, and continues to suffer, anxiety, insomnia, mental anguish, distress, and damages in an amount to be proven at trial.

## COUNT VI

### Libel (Against Defendant Arizona)

94. Plaintiffs re-allege and incorporate by reference claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein.

95. Defendant Arizona is vicariously liable under the principle of *respondeat superior* for the acts and omissions of its employees, such as Arizona Department of Public Safety, because it was acting within the scope and course of its employment with Defendant Arizona.

96. Defendant Arizona knew or should have known of the publication made by the Arizona Department of Public Safety's website that was libel per se as it intended to impeach the Plaintiffs' honesty, integrity, and reputation by stating crimes that Defendeat of Arizona knew or should have known were not committed by the Plaintiffs and all charges were dropped six weeks before the publication was made.

97. At the time of publication, Defendant Arizona knew, or should have known, that the arrest was unlawful, and the charges were not true based on any probable cause.

98. At the time of publication, the charges against Plaintiffs had all been dismissed as a result of the Court's finding of "no probable cause."

99. Defendant Arizona knew or should have known that the statements made by the Arizona Department of Public Safety were knowingly false and completely destructive statements that were intended by Defendant to destroy Plaintiffs' honesty, integrity, and reputation.

100. As a direct result of Defendant Arizona's libel acts, Plaintiffs have suffered, and continues to suffer, anxiety, insomnia, mental anguish, distress, and damages in an amount to be proven at trial.

## COUNT VII

### False Light – Invasion of Privacy

101. Plaintiffs hereby re-allege and incorporate by reference each of their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein realleged.

102. Defendant Arizona is vicariously liable under the principle of *respondeat superior* for the acts and omissions of its employees, such as Arizona Department of Public Safety, because it was acting within the scope and course of its employment with Defendant Arizona.

103. Defendant Arizona knew or should have known that the DPS would cast false light and invasion of privacy.

104. Defendant Arizona knew or should have known that all charges were dropped against the Plaintiffs six weeks before DPS published their internet article with

knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and the false light in which the Plaintiffs were placed would be highly offensive to a reasonable person in the plaintiff's position.

105. The contents of Defendant's internet press release issued after the no probably cause order was damaging to Plaintiffs' honesty, integrity, and reputation.

106. Defendant published on the internet false statements about Plaintiffs.

107. At the time of publication, Defendant Arizona knew, or should have known, that the arrest was unlawful, and the charges were not true based on any probable cause.

108. At the time of publication, the charges against Plaintiffs had all been dismissed as a result of the Court's finding of "no probable cause."

109. Defendant knew, or should have known, that at the time of publication, that a Court of law had already found "no probable cause."

110. As a direct result of Defendant's false statements in its press release, Plaintiffs have been placed in a false light and have been deprived of property, their good name, and have been emotionally and financially damaged have been emotionally and financially damaged.

## COUNT VIII:
## Civil Rights Violations - 42 U.S.C. § 1983
### (Against Defendant Watt)

111. Plaintiffs hereby re-allege and incorporate by reference each of their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein realleged.

112. The Fourth Amendment prohibits unreasonable searches and seizures. Defendant Watt entered the premises of the Plaintiffs' and seized property of the Plaintiffs' without legally being able to do so.

113. As a direct result of Defendant Watt's unreasonable search and seizure of Plaintiffs' property, Plaintiffs have been deprived of their property and have been emotionally and financially damaged.

## COUNT IX:

## Violation of Rights Secured by The Fifth Amendment Of The Constitution

### (Against Defendant Watt)

114. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations set forth in the preceding contained in the paragraphs above, as if set forth fully herein.

115. Plaintiffs were not read their Miranda rights until several hours after their arrest, and only after several hours of intimidation, threats, and interrogation.

116. Defendants further denied Plaintiffs their right to counsel

117. As a direct result of Defendant Watt's intimidation tactics to coerce cooperation and try to self-incriminate Plaintiffs, Plaintiffs have been deprived of confidentiality protected by law, as well as their property, their good name, and have been emotionally and financially damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for damages and for judgment against Defendants as follows:

   A. General and compensatory damages in an amount to be proved at trial;
   B. For taxable costs and pre and post judgment interest to the extent permitted by law;
   C. Punitive damages in an amount deemed just and reasonable as permitted by law against Defendant Watt;
   D. For costs and attorneys' fees as authorized by applicable state and federal laws;
   E. Such other and further relief which may seem just and reasonable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully request a trial by jury on all issues in this matter triable to a jury.

///

RESPECTFULLY SUBMITTED this 4th day of September, 2020.

ATTORNEYS FOR FREEDOM

By: /s/Jody L. Broaddus
Jody L. Broaddus, Esq.
Marc J. Victor, Esq.
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2020, I sent this document and any attachments thereto by first class mail to:

Christopher J. Feasel, Esq.
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ 85004-1592
DefensePhx@azag.gov
Christopher.Feasel@azag.gov
Attorney for Defendants

By: /s/*Kimberly Molakas*
Kimberly Molakas