SKC

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brigham Burton, et al., | No. CV-20-00920-PHX-JAT |
| Plaintiffs, | |
| v. | **ORDER** |
| Arizona Department of Public Safety, et al., | |
| Defendants. | |

Plaintiffs, husband and wife, Brigham ("Plaintiff Brig") and Carly ("Plaintiff Carly") Burton, who are represented by counsel, brought this action pursuant to 42 U.S.C. § 1983 and Arizona state law. On June 30, 2025, the Court granted summary judgment to Defendants the State of Arizona (the State) and Arizona Department of Public Safety (DPS) Detective Kevin Watt on all claims, and the Clerk of Court entered judgment in favor of Defendants and against Plaintiffs. (Docs. 89, 90.) Pending before the Court is Plaintiffs' Rule 60(b)(1) Motion in which Plaintiffs move the Court to reverse judgment on their false arrest, defamation, and false light claims. (Doc. 92). The Motion is fully briefed. (Docs. 97, 100.) Plaintiffs also filed a Notice of Appeal to the Ninth Circuit Court of Appeals. (Doc. 93.)

**I.   Background**

Plaintiffs' claims in this action arise from their May 16, 2019 arrests by Defendant Watt and other DPS officers on charges of aggravated taking the identity of another or entity, forgery, fraudulent schemes and artifices, fraudulent schemes and practices/willful

concealment, perjury by inconsistent statements, theft, and unlawful use of food stamps. (Doc. 11 ¶ 39.)  As relevant to Plaintiffs' Rule 60(b) Motion, Plaintiffs asserted Fourth Amendment false arrest claims against the State and Defendant Watt in Count I based on the arrests of both Plaintiffs, and the Court granted summary judgment to Defendants on the ground that the arrests were supported by probable cause.  (*See* Doc. 89 at 11−22.) Plaintiffs also brought state law defamation and false light claims against the State based on unidentified DPS employees' posting of a June 24, 2019 press release about Plaintiffs' arrests ("the Post") to the DPS website, alleging that the Post contained "false and defamatory statements about the Plaintiffs" (Doc. 11 ¶ 34), and the Court granted summary judgment to the State on the ground that the statements in the Post were "substantially true." (Doc. 89 at 26−36.)

## II.     The Court's Jurisdiction

Generally, after a timely notice of appeal has been filed, district courts no longer have jurisdiction over a case and lack authority to address post-judgment motions.  *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.)  Rule 4(b)(4)(A) of the Appellate Rules of Procedure provides, however, that "[i]f a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(A).

A Rule 60 motion is one of the motions listed in Rule 4(a)(4)(A), which the Court is required to resolve before the Ninth Circuit has jurisdiction to consider a party's appeal. *See Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1063−65 (9th Cir. 2002) (after a notice of appeal is filed, the district court must dispose of any timely filed motions listed in Appellate Rule 4(a)(4)(A) before the Ninth Circuit Court of Appeals may assume jurisdiction over the appeal).

- 2 -

**III.    Governing Standard**

The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir. 1992). "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Any motion for reconsideration must specifically identify the matters that were overlooked or misapprehended by the Court. *Id.* If any new matters are being brought to the Court's attention for the first time, the movant must identify the reasons they were not presented earlier and any specific modifications being sought in the Court's Order. *Id.* No motion for reconsideration of an Order may repeat any oral or written argument made in support of or in opposition to the motion that resulted in the Order. *Id.*

Rule 60(b), which sets forth the grounds for relief from judgment, "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). The moving party bears the burden of proving the existence of a basis for Rule 60(b) relief. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988). Although the moving party's factual allegations are to be accepted as true, mere legal conclusions, general denials, or simple assertions are insufficient to justify overturning the underlying judgment. *Id.*

**IV.    Analysis**

    **A.    False Arrest**

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. To prevail on a Fourth Amendment false arrest claim, a plaintiff must show there was no probable cause for the arrest. *See Cabrera v. City of Huntington Park*, 159

- 3 -

F.3d 374, 380 (9th Cir. 1998) (citation omitted). Probable cause exists when an officer has reasonably trustworthy information of facts and circumstances that are sufficient to justify the belief that an offense has been or is being committed. *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (citing *Brinegar v. United States*, 338 U.S. 160, 175−76 (1949)). "Mere suspicion, common rumor, or even strong reason to suspect are not enough . . . . There must be some objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a criminal offense." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (internal citation omitted).

"Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). When determining whether probable cause exists, the Court looks to the totality of the circumstances known to the arresting officer at the time of the arrest. *Id.* (internal quotation marks and citation omitted). "In applying these standards, [courts] must consider all the facts known to the officers and consider all the reasonable inferences that could be drawn by them before the arrest." *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975). "[P]robable cause must be evaluated from the perspective of 'prudent men, not legal technicians.'" *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). Where any potential crime is supported by probable cause, the arrest is justified. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 952 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 n. 14 (9th Cir. 2010); *Barry v. Fowler*, 902 F.2d 770, 773, n.5 (9th Cir. 1990); *Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008).

Plaintiffs argue that the Court erred in finding that Defendant Watt had probable cause to arrest them because the Court failed to properly consider the opinion of Plaintiffs' expert Dr. Hynes. (Doc. 92 at 12−13.) Relying on this evidence, Plaintiffs note that Dr.

Hynes reviewed Defendant Watt's investigation report and 2024 deposition testimony, and Dr. Hynes opined that he "ha[s] serious concerns relating to the probable cause thresholds having been met due to the inconsistencies during [Defendant Watt's] deposition statements and the lack of transparency concerning factual omissions that occurred from incompetence/inexperience or malice." (Doc. 92 at 12 (quoting Doc. 79-5 at 5).)[1] Plaintiffs argue that it is the jury's duty to hear and consider this testimony to determine whether Defendant Watt had probable cause, and they argue in conclusory fashion that Dr. Hynes' "thorough and detailed report, in addition to the material he confirms he reviewed, raise fact disputes that were not considered by the Court." (Doc. 92 at 13.)

Plaintiffs fail to show that the Court erred by not considering this evidence or by finding that Plaintiffs' arrests were supported by probable cause. As an initial matter, the Court was not required to consider Dr. Hyne's report, which Plaintiffs cite for the first time in their Rule 60(b) Motion, because Plaintiffs never cited to it in their Response to Defendants' Motion for Summary Judgment or otherwise incorporated it into their arguments opposing that Motion. Plaintiffs' mere attachment of portions of this Report and many other unidentified exhibits to their Response, without any reference to them in their memoranda of law, is inadequate to defend against summary judgment. *See* Fed. R. Civ. P. 56(c)(2)(A); LRCiv. 56.1. As the Court noted in its Order granting Defendants'

---

[1] Plaintiffs also cite to Dr. Hynes's opinion that the affidavit Defendant Watt relied on to obtain a search warrant for Plaintiffs' home "appeared to be vague, incomplete, [and] lacking in specific details and thoroughness to validate his [finding of] probable cause," and it "appeared to have been [prepared by] an inexperienced or incompetent investigator." (Doc. 92 at 12, 13 (quoting Doc. 79-5 at 5, 7).) In addition to being conclusory, this opinion is irrelevant to Plaintiffs' Rule 60(b) Motion because Plaintiffs do not argue that the Court erred in dismissing Plaintiff's Fourth Amendment unreasonable search and seizure claims based on the search of Plaintiffs' home. Moreover, Dr. Hynes's second-guessing of the bases upon which the search warrant was granted is of no moment because there is no material dispute that Defendant Watt obtained a valid search warrant, and this is sufficient to satisfy Fourth Amendment standards. *See Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (searches and seizures pursuant to a valid search warrant are "permissible invasions of the home and its curtilage").

Motion for Summary Judgment, the Court was not required to

> comb[] through the nearly 200 pages of Plaintiffs' attachments and errata to those attachments to attempt to find support for Plaintiffs' arguments. *See Orr v. Bank of America*, 285 F.3d 764, 775 (9th Cir. 2002) (internal quotation omitted) ("Judges need not paw over the files without assistance from the parties."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (citation omitted).

(Doc. 89 at 17 n.17.)

Even considering the portions of Dr. Hynes's report Plaintiffs now cite for the first time in their Rule 60(b) Motion, Plaintiffs fail to identify any facts therein that would create a genuine issue of material fact that Defendant Watt lacked probable cause to arrest Plaintiffs. Dr. Hynes's cited concerns about unidentified "inconsistencies" between Defendant Watt's investigative reports and deposition statements, made five years apart, and Defendant Watt's purported "lack of transparency concerning factual omissions" are vague and conclusory and fail to identify any facts that would create a genuine issue of material fact that Defendant Watt lacked probable cause to arrest Plaintiffs for any of the offenses charged.

Dr. Hynes's opinion that Defendant Watt's work appeared to be that of "an inexperienced or incompetent investigator," is likewise conclusory, and in any event, untethered to the probable cause standard, which does not require that a police officer have technical expertise but only that he be aware of sufficient facts "to warrant a [person] of reasonable caution" to believe an offense has been committed. *Stoot*, 582 F.3d at 918 (quoting *Brinegar*, 338 U.S. at 75−76) (internal quotation marks omitted) (alteration from "man" to "person" in *Stoot*)); *see also Gasho*, 39 F.3d at 1420 (probable cause "must be evaluated from the perspective of 'prudent men, not legal technicians'"). Notably, probable cause is a lower standard than what is required to prove an offense at trial. *See Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1209 (9th Cir. 2011) (to establish probable cause, "police are not required to believe to an absolute certainty, or by clear and

convincing evidence, or even by a preponderance of the available evidence that a suspect has committed a crime. All that is required is a fair probability, given the totality of the evidence, that such is the case").

The Court correctly applied this standard when it granted summary judgment to Defendants on Plaintiffs' false arrest claims. Specifically, the Court set forth the relevant facts and circumstances known to Defendant Watt about Plaintiffs' conduct from Defendant Watt's investigation; applied those facts and circumstances to the elements of two specific crimes for which Plaintiffs were arrested, i.e. forgery under Arizona Revised Statutes § 13-2002 (Plaintiff Brig) and unlawful use of food stamps under Arizona Revised Statutes § 13-3701(A) (Plaintiff Carly); and found that a reasonable officer, knowing these facts and circumstances, could have reasonably concluded Plaintiffs committed these crimes. (Doc. 89 at 13−22.) The Court need not restate that analysis here because, in their Rule 60(b) Motion, Plaintiffs do not materially dispute any of the Court's findings or the detailed factual analyses on which they rest; nor do they point to any controverting facts that would compel a different conclusion. Merely citing to one or two summary statements in an expert report in which their expert criticizes Officer Watt's investigation, untethered to any facts or the probable cause standard, and speculating that, presented with these bald statements, a reasonable jury could reach a different conclusion than the record evidence shows is insufficient to create a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("a party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial").[2] The Court will deny Plaintiffs' Rule 60(b) Motion regarding its findings of

---

[2] Even if, as Plaintiffs claim, Dr. Hynes's report is, on the whole, "thorough and detailed," and "the material [Dr. Hynes] confirms he reviewed," is sufficient to raise questions of fact for trial, to survive summary judgment, Plaintiffs were required to identify and direct the Court's attention to the facts in the report or other materials that make that showing. Fed. R. Civ. P. 56(c)(1)(A); *Anderson*, 477 U.S. at 248. Plaintiffs cite to no authority for the proposition that merely having a detailed expert report somewhere in the record is sufficient to require a jury determination on a material issue purportedly addressed somewhere in that report or somewhere in the underlying materials the expert reviewed.

1  probable cause and its resulting dismissal of Plaintiffs' false arrest claims.

2        **B.**      **Defamation and False Light**

3  To prevail on a defamation claim under Arizona law, a plaintiff must show (1) the defendant published a false and defamatory statement, and (2) the defendant either (a) knew the statement to be false and defamatory, (b) acted in reckless disregard to these matters, or (c) acted negligently in failing to ascertain them. *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977). Similarly, to prevail on a claim for false light, "a plaintiff must show (1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015).

"[I]f an allegedly defamatory statement is substantially true, it provides an absolute defense to an action for defamation." *Fendler v. Phoenix Newspapers Inc.*, 636 P.2d 1257, 1261 (Ariz. Ct. App. 1981). Additionally, "[s]light inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 465–66 (Ariz. Ct. App. 2017) (quoting *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. 1991)). Similarly, for false light claims, "the publication must contain 'a major misrepresentation of [the plaintiff's] character, history, activity, or beliefs,' not just slight inaccuracies." *Canas v. Bay Ent., LLC*, 498 P.3d 1082, 1087 (Ariz. Ct. App. 2021). When assessing for defamation, the Court must consider the totality of the circumstances and take the average reader's viewpoint. *Phoenix Newspapers, Inc. v. Church*, 447 P.2d 840, 845 (Ariz. 1968). Accordingly, publications are not to be evaluated by the "critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader." *Yetman v. Eng.*, 811 P.2d 323, 329 (Ariz. 1991) (internal alterations, and citations omitted).

Plaintiffs argue that the Court erred by finding the statements DPS employees published in the Post following Plaintiffs' arrests were "substantially true" because, they

- 8 -

argue, "substantial truth" is a question of fact for a jury to decide. (Doc. 92 at 2.) They argue that "the question of substantial truth is only a matter for the Court to decide '[w]hen the underlying facts are **undisputed**.'" (*Id.* (quoting *Read*, 819 P.2d at 941) (emphasis added by Plaintiffs).)

Quoted more completely, *Read* stated, "[w]hen the underlying facts are undisputed, the determination of substantial truth is a matter for the court"; it did not say, as Plaintiffs suggest, that the Court can *only* make a finding of substantial truth, as the Court did here, when the underlying facts are undisputed. Such a standard would effectively eviscerate the "substantial truth" defense on summary judgment, making substantial truth a per se jury question any time there is any reasonable dispute as to the *literal* truth of a statement. This is not the standard for substantial truth. *See, e.g.*, *Heuisler v. Phoenix Newspapers, Inc.*, 812 P.2d 1096, 1103 (Ariz. Ct. App. 1991) ("Slight inaccuracies will not prevent a statement from being true in substance, as long as the "gist" or "sting" of the publication is justified") (quoting *Fendler v. Phoenix Newspapers,* 636 P.2d 1257, 1261 (Ariz. App.1981)); *Read*, 819 P.2d at 941 ("the issue is whether the 'gist' or 'sting' of the statements published in *The Republic* would have made a material difference to a reader had the newspaper published the literal truth of Read's conviction and sentence. We believe it would not have made such a difference").

*Read*, which Plaintiffs cite to show the Court improperly invaded the province of the jury, also does not support Plaintiffs' position that any time there is a reasonable dispute about the literal truth of a published fact, "substantial truth" is outside the purview of the Court to decide.

In *Read*, there was no dispute that the private individual who sued the newspaper for defamation was convicted of a crime, as the newspaper reported. 819 P.2d at 941. It was in this context that the Arizona Supreme Court stated that the underlying fact—the plaintiff's conviction—was undisputed, making a finding of "substantial truth" on *that issue* a question for the court. (*Id.*) But the court then went on to discuss *other* published statements that contained inaccuracies, such as the newspaper's incorrect description of the

- 9 -

plaintiff's crime, and the court did not rule that whether these statements were substantially true presented a factual dispute only a jury could decide. Instead, it found based solely on the record evidence that, "[t]he published statements gave a substantially true account of Read's conviction." *Id.* at 942. The court went on to say that,

> An incorrect identification of a person's crime in a published report is not, by itself, a triable issue of fact for a jury, particularly when the reported crime, although technically inaccurate, is an accurate reflection of the underlying incident. Many courts have held that technical errors in legal terminology and reports involving violation of the law are of no legal consequence. *See, e.g., Simonson v. United Press Int'l, Inc.,* 654 F.2d 478 (7th Cir.1981) (not defamatory to report person charged with rape when actually charged with second degree sexual assault); *Orr v. Argus–Press Co.,* 586 F.2d 1108 (6th Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) (the word "swindle" substituted for "defraud" not defamatory); *Hovey v. Iowa State Daily Publication Bd., Inc.,* 372 N.W.2d 253 (Iowa 1985) (statement that criminal defendant charged with rape rather than second degree sexual assault not defamatory); *Hopkins v. Keith,* 348 So.2d 999 (La. App.1977) (not defamatory to report plaintiff convicted of running a gambling game when in fact he forfeited a substantial bond on the charge).

*Id.* at 942.

Nothing in this opinion or Plaintiffs' other citations compels the conclusion that a finding of substantial truth, even when some of the underlying facts are disputed, is a per se jury question.[3]

Plaintiffs also argue that, although the Court correctly stated that publications are

---

[3] Plaintiffs also rely on a citation in *Rogers v. Mroz*, 502 P.3d 986, 993 (Ariz. 2022), to the Restatement (Second) of Torts § 563 cmt. e (1977), which states that, unless what a publication's readers would "reasonably underst[and]" from the statements therein is free from reasonable doubt, "it is for the jury to determine the meaning and construction of the alleged defamatory language." (*See* Doc. 92 at 2). The Comment does not say, as Plaintiffs suggest, that every statement must, itself, be free from any reasonable doubt; it says only that what an average reader would "reasonably understand" from that statement must be free from reasonable doubt.

- 10 -

not to be evaluated by the "critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader" (*see* Doc. 89 at 27, citing *Yetman*, 811 P.2d at 329), the Court failed to correctly apply this standard because it "adopted too broad of a framework for the context of the Post." (Doc. 92 at 3, citing Doc. 89 at 27, 35.) Plaintiffs rely on Comment d of the Restatement of Torts § 563, which they argue "sets forth certain boundaries of the 'context' of [an alleged defamatory] statement that are narrower than what was . . . adopted by the Court." (*Id.*)

Comment d states that "[i]n determining the meaning of a communication, words, whether written or spoken, are to be construed together with their context." Restatement (Second) of Torts § 563, cmt. d (1977). The Comment goes on to clarify that "[t]he context of a defamatory imputation includes all parts of the communication that are ordinarily heard or read with it. Circumstances in various types of situations determine the extent of the context" to be considered. *Id.* By way of example, it states,

> the text of a newspaper article is ordinarily not the context of the headline, although it may explain or qualify a defamatory imputation conveyed when the headline alone is read. This is true because the public frequently reads only the headlines of a newspaper or reads the article itself so hastily or imperfectly as not to realize its full significance. On the other hand, the entire contents of a personal letter are considered as the context of any part of it because a recipient of the letter ordinarily reads the entire communication at one time.

*Id.*

Plaintiffs do not explain how the Court's substantial truth analysis ran afoul of this guidance. As an initial matter, the Post was a press release on a law enforcement website, not a newspaper article directed to the general public, as exemplified in the comment. But taking Plaintiff's apparent point as true that, like a newspaper article, "the text of [a press release] is ordinarily not the context of the headline . . . because the public frequently reads only the headlines of a [website] or reads the article itself so hastily or imperfectly as not to realize its full significance," the Court did not erroneously impute to the average reader

full and complete knowledge of the Post's content when addressing its component parts and did not fail to "differentiate[] between the headline of an article and the body of an article," as Plaintiffs appear to argue. (*See* Doc. 92 at 3.) Instead, the Court addressed each part of the Post separately and discussed the commonly understood meaning of the words and phrases therein. (*See* Doc. 89 at 30−36.) In doing so, the Court imputed to the average reader of the Post only a general knowledge of the overall context and purpose of a police press release, not a close understanding of every detail reported in the text. For example, when discussing the Post's omission of any facts about Plaintiffs' initial appearance and release on criminal charges, the Court found that this omission did not mean that the statements in the Post were not substantially true because it did not change the facts that Plaintiffs were arrested and charged with the stated crimes, and because "the overall context and purpose of the Post was to notify the press and public of DPS's law enforcement actions, not to present a criminal case for trial." (*Id.* at 30.) Similarly, the Court found that, even without qualifiers to indicate that Plaintiffs had not been found guilty of the crimes the Post said they committed, "[a]n average reader would know from its overall context that the Post was announcing only what the DPS investigation found, not a final judgment in a court of law." (*Id.* at 35.)

While ostensibly continuing to rely on Comment d, Plaintiffs also take issue with these aspects of the Court's contextualization, arguing that the Court erroneously imposed on the average reader knowledge that "investigations and even arrests by the police may be unfounded, based on early investigations, and may ultimately be thrown out by a court," and that, since the Post did not explicitly state these things, the average reader would not know this and would read the statements in the Post as "determinative." (Doc. 92 at 4.)

Although couched as an argument that the Court did not apply the correct legal standard, Plaintiffs merely repeat arguments they made on summary judgment that the Court already addressed and rejected (*see* Doc. 89 at 29−36), and they effectively ask the Court to rethink what it already thought. This is not a proper ground for seeking post-judgment relief. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (Motion

under Rule 59(e) "was properly denied [because] it presented no arguments that had not already been raised in opposition to summary judgment").

In the same vein, Plaintiffs argue that "[t]he average reader would fairly assume that the police officer who investigated the Plaintiffs, compiled the alleged evidence, and ultimately caused the arrests to be made had the requisite training and experience to be able to support the accusations in the Post," and they argue that, here, "Detective Watt's own testimony undermine[s] this rational assumption of the average reader." (Doc. 92 at 5.) Plaintiffs go on to cite purportedly disqualifying statements Detective Watt made during his deposition in this action regarding the difference between a civil and criminal offense, without showing how any of Watt's statements are false or explaining how his answers to questions put to him in general terms allegedly disqualified him from investigating the specific criminal offenses in this action. (*Id.*)[4]

Plaintiffs also argue that Detective Watt's lack of experience in civil litigation and lack of business and financial education made him unqualified to understand the civil suit documents and contracts he reviewed as part of his criminal investigation of Plaintiffs. (*Id.* at 5−6.) Once again, Plaintiffs fail to show how these alleged deficiencies in Detective

---

[4] Among other things, Plaintiffs fault Detective Watt for opining, in answer to a general question about the difference between civil fraud and criminal fraud:

> A. So[,] my understanding would be that it's the same thing. It's – there's just a different threshold.
>
> In a civil fraud case, it would be based on preponderance of the evidence, whereas with a criminal fraud, it would have to be proven beyond a reasonable doubt.
>
> I also would say Arizona has a statute that defines it, fraud. So[,] you would have to refer to the statute to determine whether or not it applied.

(Doc. 79-11 at 7, Watt Dep. at 28:10−24.)

Plaintiffs do not identify anything in this opinion that is inaccurate under applicable law or say how these statements have any bearing on Defendant Watt's training and ability to investigate criminal fraud, as was at issue here.

- 13 -

1  Watt's training and experience resulted in him falsely accusing Plaintiffs of crimes. Absent
2  any citations to evidence showing that any of the *facts* in Detective Watt's reports
3  underlying the criminal charges against Plaintiffs were false, Plaintiffs' generalized attacks
4  on Detective Watts' purported lack of qualifications are insufficient to create a genuine
5  issue of material fact that he made any false statements about Plaintiffs in his investigative
6  reports. Moreover, Plaintiffs' attempts to tangentially tie Detective Watt's purported lack
7  of relevant experience to the merits of their defamation and false light claims is misplaced.
8  First, there is no evidence Detective Watt had any involvement in writing or publishing the
9  Post that would give rise to a defamation or false light claim against the State based on
10 Detective Watt's conduct. More fundamentally, even if Plaintiffs can show that Detective
11 Watt did not have the requisite knowledge and experience to investigate Plaintiffs' alleged
12 criminal conduct, to prevail on a defamation or false light claim, they must show that these
13 alleged deficiencies led him to make a published statement in the Post that was false or, at
14 the very least, not "substantially true," and that he did so knowing the statement was untrue
15 or in reckless disregard to its falsity. *Peagler*, 560 P.2d at 1222; *Desert Palm*, 343 P.3d at
16 450. Simply attacking Defendant Watt's credentials without making these showings is not
17 enough to withstand summary judgment on Plaintiffs' defamation and false light claims.

18       Plaintiffs make other arguments that, at most, go to whether a more thorough
19 investigation would have revealed exculpatory facts, which is not the standard for whether
20 the reported facts were substantially true. Plaintiffs argue, for example, that the Post
21 inaccurately described the persons or entities Plaintiff Brig was accused of defrauding as
22 "victims" because it did not also include that Plaintiff Brig was, himself, the plaintiff or
23 purported victim in several civil lawsuits that they argue Detective Watt did not properly
24 investigate. (Doc. 92 at 8, 10.) Plaintiffs effectively argue that, to be substantially true, a
25 press release announcing the findings of a criminal investigation cannot simply include the
26 crimes for which a suspect was arrested and charged but must affirmatively discover and
27 report any additional available facts that would, like a pre-sentencing report, attempt to
28 balance out the bad with the good. Plaintiffs cite no authority for the proposition that, to

be substantially true, a police press release announcing the findings of a criminal investigation must include sufficient additional facts to outweigh the sting of the facts presented. As noted, the Post was published on a law enforcement website announcing the findings of a criminal investigation. It was not, and did not purport to be, a comprehensive account of all of Plaintiffs' business and financial dealings; nor is the Court persuaded that an average reader would be misled into thinking it was.

Plaintiffs also hold up in comparison to the Post an ABC15 news report, which they present for the first time as "an example of the difference accurate reporting can make." (Doc. 92 at 4.)[5] Plaintiffs note that, unlike the Post, the ABC15 article contains qualifiers, saying Plaintiffs were "accused of" certain crimes, not that they committed these crimes, and it includes an editor's note stating, "charges against Kent and Carly Burton were dropped shortly after their arrests." (*Id.*; Doc. 79-10 at 3.)[6] Plaintiffs argue that, "even though the Post was made *after* Judge Carson dismissed the charges for lack of probable cause, the Post does not mention that critical and exculpatory fact anywhere—but the ABC15 article does." (Doc. 79 at 4.)

Although Plaintiffs did not previously cite to the ABC15 article, their arguments that the Post was not substantially true because it did not use similar qualifiers to explain that the crimes for which they were arrested were "charges only," merely restate arguments Plaintiffs already made on summary judgment that the Court rejected. (*See*, *e.g.*, Doc. 79 at 11; Doc. 89 at 34−35.) Plaintiffs' implied argument that the Post was required to emulate the more equivocal language ABC15 used in its news article is also without merit. The ABC15 article, while more to Plaintiffs' liking, does not set the legal standard for a police

---

[5] Plaintiffs' note that they attached this article to their Response. (*See* Doc. 92 at 4; Doc. 79-10, Ex. 7.) As with their expert report, however, Plaintiffs did not cite to this article in their summary judgment briefing.

[6] A byline just under the reporter's name and just above the editor's note states, "Posted 12:22 PM, Jun 25, 2019 and last updated 5:51 PM. July 23, 2020." (Doc. 79-10 at 3.) This suggests that the editor's note was added more than one year after the article's original publication.

press release announcing the findings of a criminal investigation; nor does it warrant reconsideration of the Court's finding that, based on the undisputed facts from Defendant Watt's investigation, the Post was "substantially true." There is also no evidence that the unidentified State employees who published the Post knew that any statements therein were false or that they acted in reckless disregard of the truth when they posted it on the DPS website.

Plaintiffs' additional argument that, "as evidenced by the comparison to the ABC15 report, the Post fails to state that Judge Carson found no probable cause for the arrests and that the charges were dropped" is also not grounds for reconsideration. (*See* Doc. 92 at 4, 8.) Contrary to Plaintiffs' arguments that the Post "was made *after* Judge Carson dismissed the charges for lack of probable cause" (Doc. 79 at 4), there are no facts on the record showing that the charges against Plaintiffs were dropped prior to the publication of the Post on June 24, 2019 or prior to the ABC15 article's original publication on June 25, 2019. Instead, the evidence shows only that, on May 17, 2019, Plaintiffs made their initial appearance before Maricopa County Superior Court Commissioner Michelle Carson, and Commissioner Carson found no probable cause to hold Plaintiffs on the then-pending criminal charges and ordered their release. (Doc. 73-3 at 57.)

The Court addressed these facts in its summary judgment Order when discussing probable cause to arrest, wherein it found that Commissioner Carson's "no probable cause" finding at Plaintiffs' initial appearance did not defeat that showing. (Doc. 89 at 15−16.) As the Court then explained,

> When a suspect is arrested without a warrant, a judicial determination of probable cause is required "as a prerequisite to extended restraint on liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). The parties have not shown what facts or evidence were presented at Plaintiffs' initial appearance or why Commissioner Carson determined those facts fell short of establishing probable cause for Plaintiffs' continued detention. The record is replete, however, with facts about what Defendant Watt uncovered in his investigation, including the facts and evidence regarding Plaintiff Brig's

> Desert Schools business account application for Agricann and his separate website description of Agricann as a medical marijuana grow operation. As discussed, these facts and evidence show Defendant Watt had probable cause to arrest Plaintiff Brig for forgery under § 13-2002(A). Because probable cause to arrest is based on the totality of the circumstances known to the arresting officer(s) at the time, not what is later presented in criminal proceedings, any contrary finding at Plaintiffs' initial appearance, or even an ultimate vindication on the charges at trial, does not alter this determination. *See Beauregard*, 362 F.2d at 903.

(*Id.*)

The Court also already addressed and rejected Plaintiffs' argument that, by not including any facts about Commissioner Carson's no probable cause finding, the statements about Plaintiffs' arrests in the Post were not substantially true, stating,

> Plaintiffs do not cite to any authority for the proposition that, to be substantially true, a publication of an arrest must include all known exculpatory facts. The Court is also not persuaded that the omission of the commissioner's no probable cause finding [at Plaintiffs' initial appearance] makes the facts of Plaintiffs' arrests and charges in the Post untrue or casts Plaintiffs' documented actions at that time in a false light. As discussed, it is not clear on the record what facts were presented at the initial appearance hearing, and while Commissioner Carson's no probable cause finding necessitated Plaintiffs' release from custody, **it did not change any of the underlying facts in Defendant Watt's investigation or mean that Plaintiffs were not, in fact, arrested and charged with the stated crimes.** Additionally, the overall context and purpose of the Post was to notify the press and public of DPS's law enforcement actions, not to present a criminal case for trial. In this context, the omission of any facts about Plaintiffs' initial appearance, including the no probable cause finding, does not make the facts of their arrests and charges false or place Plaintiffs' character, history, activity, or beliefs in a false light.

(Doc. 89 at 29−30 (emphasis added).)

Now, based on nothing more than the editor's note in the ABC15 article, which the

- 17 -

1    evidence shows was added more than one year after Plaintiffs' arrests, Plaintiffs flatly
2    claim that, "[w]hile it is true that the Plaintiffs were arrested, they were **almost**
3    **immediately released and the charges were dropped**," and they argue, "[i]t is not for the
4    Court to decide . . . whether and what the legal grounds were for dismissing the charges"
5    because "the average reader would find persuasive the fact that **the charges were dropped**
6    **as soon as they were put before a Judge**."  (Doc. 92 at 8 (emphases added).)

7    　　　　As already noted, Plaintiffs' attempt to rehash arguments the Court already
8    thoroughly considered and rejected in its summary judgment Order is improper.
9    Additionally, doing so while also misrepresenting the facts about the state of the active
10   criminal charges against them when the Post was published is not well taken.  Not only do
11   Plaintiffs fail to present any evidence that the criminal charges against them were dropped
12   before the Post was published, but the record evidence shows that, in subsequent grand
13   jury proceedings on August 11, 2021, Plaintiff Brig was indicted on five criminal counts:
14   (1) fraudulent schemes and artifices, a class 4 felony, (2) forgery, a class 4 felony,
15   (3) forgery, a class 4 felony, (4) fraudulent schemes and artifices, a class 4 felony, and
16   (5) theft, a class 2 felony, and on September 18, 2023, he pleaded guilty to an amended
17   charge of criminal possession of a forgery device for which he was later sentenced, and the
18   State agreed as part of his plea bargain—a full four years after Plaintiff's arrests and the
19   publication of the Post—not to bring criminal charges against Plaintiff Carly.  (Doc. 73-3
20   at 62−64; Doc. 73-4 at 2−16.)  These facts clearly refute Plaintiffs' claim that, at the time
21   the Post was published, the charges against Plaintiffs had been dropped.

22   　　　　Plaintiffs' remaining arguments regarding other alleged false and defamatory
23   statements in the Post likewise either merely repeat arguments Plaintiffs already made on
24   summary judgment that the Court rejected or rely for the first time on evidence Plaintiffs
25   never cited in their summary judgment briefing.  (*See* Doc. 92 at 8−12.)  As noted, these
26   are not grounds for relief from a judgment.  LRCiv 7.2(g)(1) ; *Backlund*, 778 F.2d at 1388.

27   　　　　Plaintiffs make one additional legal argument, which is also not grounds for relief.
28   They argue that the Court erred by "incorrectly [placing] the burden [of proof] on Plaintiffs

1    in a defamation case" when it stated on page 35 of its summary judgment Order that
2    "Plaintiffs have the ultimate burden of showing that the Post's statements, collectively
3    identifying both Burtons in [defrauding DES], are false, and [Plaintiffs] have not directed
4    the court to anything on the current record that would make this showing." (Doc. 92 at 7,
5    quoting Doc. 89 at 35.)

6    Prior to this statement, the Court found there was enough undisputed evidence on
7    the record to reasonably infer that both Plaintiffs participated in defrauding the DES, as
8    reported in the Post, and Plaintiffs had not produced any evidence that would support a
9    contrary finding. (Doc. 92 at 35.) The Court went on to explain, "Plaintiffs do not claim,
10   for instance, that Plaintiff Brig did not know about or participate in the DES fraud, and
11   they have not produced any evidence, such as an affidavit from Defendant Brig" that would
12   support this finding. (*Id.* at 35−36.) The Court did not say, as Plaintiffs appear to argue,
13   that to survive summary judgment, Plaintiffs must establish a material issue of fact
14   conclusively in their favor. Rather, it pointed out that, as the plaintiffs, they have the
15   ultimate burden of showing a false and defamatory statement at trial, and they failed to
16   identify any evidence from which they could demonstrate the falsity of the specific
17   statement at issue here. This was a proper application of the summary judgment standard,
18   which requires that, if the movant meets its initial burden, the burden shifts to the
19   nonmovants to produce sufficient evidence to demonstrate a genuine issue of material fact
20   upon which a reasonable jury could find in their favor at trial. *Anderson*, 477 U.S. at 248
21   ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if
22   the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

23   In summary, Plaintiffs have not shown that the Court erred when it granted summary
24   judgment to the State on Plaintiffs' defamation and false light claims on the ground that
25   the statements in the Post were substantially true, and the Court will deny relief from
26   judgment under Rule 60(b)(1) on these claims.

27   . . . .

28   . . . .

**IT IS ORDERED** that Plaintiffs' Rule 60(b)(1) Motion (Doc. 92) is **denied**.

Dated this 2nd day of October, 2025.

James A. Teilborg
Senior United States District Judge